UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

       Plaintiff,

       v.

TARA CONSTRUCTION, INC.; and PEDRO        Case No. 19−CV−10369−LTS
PIREZ, an individual,

       Defendants.

## SECRETARY OF LABOR'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Secretary of Labor ("Secretary") filed this action to hold Defendants accountable for their retaliatory treatment of an employee who suffered a serious workplace injury. As alleged, the crux of the case is that Defendants caused a law enforcement investigation of the employee to be initiated, and then facilitated his arrest, because he engaged in activity protected by § 11(c) of the Occupational Safety and Health Act of 1970 ("the Act").[1] As further alleged, one of the main concerns is that the retaliatory conduct at issue will chill protected activity. Given the foregoing, the relief sought by the Secretary includes: (a) compensatory damages to compensate the victim employee for the lost wages and emotional distress he suffered; (b) punitive damages to serve the broader functions of deterrence and retribution;[2] and (c) equitable relief to ensure Defendants' current and future employees are informed of their statutory rights.

---

[1] The Secretary is not contending that employers do not have the right to initiate law enforcement investigations of their employees. Rather, the Secretary's position is simply that employers must do so for legitimate reasons — i.e., not as reprisal. The situation is analogous to the termination of an at-will employee. Although employers have the general right to terminate such employees at any time, employers are prohibited from doing so in retaliation for statutorily protected activity.

[2] *See State Farm Mutual Automobile Ins. Co. v. Campbell et al.*, 538 U.S. 408, 416 (2003).

This Opposition explains why Defendants' Motion to Dismiss ("Motion") is untenable and fails as a matter of law. Even though a retaliation plaintiff in the First Circuit is not required to plead a complete prima facie case, the Secretary did so. Moreover, the Secretary did not stop there; he also pleaded facts sufficient to demonstrate that Defendants' purported reason for the conduct at issue is pretextual. The Motion should therefore be denied in its entirety.

**I.      The Motion fails because the Secretary pleaded far more than is required by law.**

**A.      As a matter of law, a retaliation plaintiff is not required to establish a complete prima facie case at the motion to dismiss stage.**

The governing statute in this case, Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1), provides:

> No person shall discharge or in any matter discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the excuse of such employee on behalf of himself or others of any right afforded by this chapter.

As the courts have observed, § 11(c), like the Act generally, should be read broadly. *E.g., Secretary v. Hoy Shoe Co.*, 32 F.3d 361, 368 (8th Cir. 1994) (observing that "otherwise the Act would be gutted by employer intimidation," and "it is clear that without employee cooperation, even an army of inspectors could not keep America's work places safe") (citations and internal quotation marks omitted).

The First Circuit expressly held in *Garayalde-Rios v. Municipality of Carolina* that, at the motion to dismiss stage, the plaintiff in a retaliation case does not need to plead facts in the complaint sufficient to establish a prima facie case, or allege every fact necessary to win at trial. 747 F.3d 15, 24 (1st Cir. 2014). In that case, the district court granted the defense's Rule 12(b)(6) motion after finding that that the Title VII retaliation plaintiff failed to allege a complete prima facie case in the complaint. *Id.* at 21. The First Circuit reversed and held that requiring the

plaintiff to establish each prong of the prima facie case in the complaint was an error of law. *Id.* at 21 & 24 (critiquing the district court for treating the prima facie case, a "flexible evidentiary standard," as a "rigid pleading standard"). The First Circuit went on to emphasize that it is the "plausibility" standard that governs. *Id* at 24. In other words, "no single allegation need establish some necessary element of the cause of action, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Id.* (citation and internal quotation marks omitted); *see also Rodriguez-Vives v. P.R. Firefighters Corps,* 743 F.3d 278, 280 (1st Cir. 2014) (reversing Rule 12(b)(6) dismissal in another Title VII case for similar reasons).

Here, there is no need for the Court to analyze the question of just how little must be plead in regard to retaliation to survive Rule 12(b)(6) because the Secretary went further than required and pleaded a complete prima facie case. Indeed, as detailed below, the Secretary went even further by also pleading facts sufficient to demonstrate pretext.

### B.    The cases cited in the Motion do not provide a basis for dismissal.

Although the Motion correctly lists the factors required to establish a prima facie case of retaliation under § 11(c), the Motion fails to cite a single case applying these factors at the Rule 12(b)(6) stage. Further, none of the cases cited in the dismissal argument at pages 10-17 of the Motion provide even a modicum of support for dismissing a § 11(c) claim at this stage. More specifically, although four of the cases cited contain statements generally applicable to any motion to dismiss, none of the four reflect any analysis of the prima facie retaliation factors, either under § 11(c) or otherwise.[3] Even more significantly, although the other three cases cited

---

[3] *Ashcroft v. Iqbal* involved alleged invidious discrimination in contravention of the First and Fifth Amendments. 556 U.S. 662, 676 (2009). *Maldonado v. Fontanes* involved a § 1983 action brought by public housing tenants. 568 F.3d 263, 266 (1st Cir. 2009). *Perez-Acevedo v. Rivero-Cubano* involved a § 1983 action brought by poultry farmers. 520 F.3d 26, 28 (1st Cir. 2008). *Aulson v. Blanchard* involved whether the Ku Klux Klan Act had been violated. 83 F.3d 1, 2 (1st Cir. 1996).

by Defendants at least involve retaliation claims, none concern the applicability of Rule 12(b)(6).[4] In short, the Motion fails to identify any on-point legal basis for its contention that the instant action fails to state a claim.

### C.    Although not required, the Complaint sets forth a complete prima facie case.

At the summary judgment stage, § 11(c) retaliation claims based on circumstantial evidence are evaluated using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] To establish a prima facie case, the Secretary must show: (1) the complainant engaged in statutorily protected activity; (2) Defendants took subsequent adverse action against the complainant; and (3) there was a causal nexus between the protected activity and the adverse action.[6] The burden to establish a prima facie case is not onerous.[7]

Once the Secretary has established a prima facie case, the burden at summary judgment then shifts to the defense to articulate a legitimate non-discriminatory reason for the adverse action. If the defense articulates a non-discriminatory reason for the adverse action, the Secretary then must demonstrate that the purported reason is a pretext[8] — and ultimately that the adverse action would not have occurred but-for the protected activity.[9]

---

[4] In *Secretary v. Fayad et al.*, the district court found after a bench trial that the defendants retaliated in violation of § 11(c). 101 F. Supp. 3d 129, 130 (D. Mass. 2015). In *Secretary v. Clearwater Paper Corp.*, the district court denied the defense's motion for summary judgment in a § 11(c) case. 2015 WL 4620736, at *1 (D. Id. July 30, 2015). In *Schweiss v. Chrysler Motors Corp.*, the Eighth Circuit affirmed the district court's holding that, although the plaintiff had established a prima facie case of retaliation under state law, the evidence presented was insufficient to survive summary judgment. 987 F.2d 558, 549 (8th Cir. 1993).

[5] *See Secretary v. Pacific Ship Repair and Fabrication, Inc.*, 2015 WL 7292594, at *6 (W.D. Wash. Nov. 16, 2015); *Secretary v. U.S. Postal Service*, 2014 WL 3925317, at *5 (W.D. Wash. Aug. 12, 2014).

[6] *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 321 (1st Cir. 2014).

[7] *Young v. United Parcel Serv. Inc.*, 135 S.Ct. 1338, 1354 (2015).

[8] *E.g.*, *Ponte*, 741 F.3d at 321; *Hoy Shoe*, 32 F.3d at 365; *Secretary v. Blue Bird Corp.*, 2009 WL 485471, at *3 (M.D. Ga. Feb. 26, 2009).

[9] *Ponte*, 741 F.3d at 321 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47 (2013)).

### 1.    The Complaint sufficiently alleges protected activity.

The Complaint alleges that José Martin Paz Flores ("Paz"), the injured employee, engaged in two types of protected activity: Paragraphs 15-19 allege multiple different ways that he reported the workplace injury he suffered; and Paragraphs 20-24 allege that he caused an OSHA inquiry into Tara Construction to commence. ECF No. 1, ¶¶ 15-24. Since it is well-established that each of these types of activities constitutes protected activity, the Motion's failure to cite any alleged legal authority to the contrary is fatal. Moreover, even though the Secretary was only required to plead one type of protected activity, the Secretary pleaded two types. The Motion thus fails on this point for two independent reasons.

#### a.  Paz engaged in protected activity when he reported his injury.

It is clear from both the applicable regulations and § 11(c) case law that reporting an injury is protected activity. *See* 29 C.F.R. § 1904.36 ("[S]ection 11(c) of the OSH Act . . . prohibits [discrimination] against an employee for reporting a work-related fatality, injury, or illness"); *id.* § 1904.35(b)(1)(iv) (prohibiting an employer from discriminating against any employee who reports a work-related injury); *Secretary v. Dura-Fibre LLC*, 2018 WL 2433589, at *6 (E.D. Wis. May 30, 2018) (explaining that, under Section 11(c), "[p]rotected activity includes reporting workplace injuries"); *Secretary v. Pac. Ship Repair & Fabrication, Inc.*, 2015 WL 7292594, at *6 (W.D. Wash. Nov. 16, 2015) (explaining that filing an injury report is protected activity).

Paragraph 15 in the Complaint alleges that Defendant Pirez visited Paz in the hospital on the day he was injured. Paragraph 16 also alleges that, "[d]uring that visit, Paz reported to Defendant Pirez that he had an accident and needed help with his medical expenses." Paragraph 17 further alleges that Paz authorized medical staff to share information about his injury with

Defendant Pirez, which the staff then did. The foregoing is more than sufficient to establish the first prong of the prima facie case. The issue is whether Paz reported his injury; since the Complaint alleges he did, both directly and indirectly, that is the end of the inquiry. *See* ECF No. 1, ¶¶ 15-17. The Motion's contention that Defendant Pirez had already learned of the injury is irrelevant. *See* ECF No. 7 at 12. The applicable law does not distinguish between instances when the employer already knew of the injury and instances when the employee's report of the injury to the employer was the first time the employer learned of the injury.

Additionally, Paragraph 18 in the Complaint further alleges that Paz also engaged in protected activity when he functionally reported his injury to John "Shane" Cronin, Tara Construction's foreman at the site where the injury occurred. As Paragraph 19 goes on to allege, Cronin then filled out an injury report, which acknowledged that the injury had been reported to Cronin. The Motion urges the Court to conclude, without citation to any retaliation case, that the fact that the Complaint does not specify who reported Paz's injury to Cronin somehow equates to the conclusion that Paz did not engage in protected activity. *See* ECF No. 7 at 11-12. There is simply no basis for this position. It is sufficient to allege, as the Complaint does, that (a) the employee was injured, (b) the supervisor who was on site became aware of the injury, and (c) that supervisor then filled out an injury report, because it is eminently plausible that Paz communicated to Cronin, directly or indirectly, that he had suffered an injury. If Defendants contend that the precise nature of that communication is relevant, they can pursue that during discovery and make whatever arguments they deem appropriate at the summary judgment stage. Relevant now is that the Motion seeks to hold the Secretary to a far more stringent pleading standard than what the law actually requires.

**b. Paz also engaged in protected activity when he caused an OSHA inquiry into Tara Construction to commence.**

It is equally clear from the Secretary's regulations that Paz causing an OSHA inquiry into Tara Construction to commence also constituted protected activity. *See* 29 C.F.R. § 1977.10(b) (explaining that it is not necessary for employees to initiate such proceedings themselves); *see also Donavan v. R.D. Andersen Construction Co.*, 552 F. Supp. 249, 253 (D. Kan. 1982) (holding that the Secretary sufficiently pleaded a § 11(c) claim where the protected activity alleged consisted of an employee communicating about workplace conditions with the media merely because an OSHA proceeding could occur as a result of such activity). Here, the Complaint alleges that: (a) Paz fell from a ladder while working and broke his leg; (b) the Boston Fire Department referred Paz's fall from the ladder to OSHA; and (c) OSHA initiated an inquiry into Tara Construction. ECF No. 1, ¶¶ 13, 21, & 22-24. The Motion's unsupported assertion that the Fire Department's notification of OSHA somehow removes this activity from the scope of protected activity is incorrect. *See* ECF No. 7 at 11 & 13.

While the Complaint does not allege that Paz himself contacted OSHA to initiate an inquiry, it is undisputed that his fall/injury were what caused the Fire Department to contact OSHA. This type of indirect cause is expressly protected by 29 C.F.R. § 1977.10(b), which states: "An employee need not himself directly institute the proceedings. It is sufficient if he sets into motion activities of others which result in proceedings under or related to the Act." Since Paz's injury from falling off the ladder set into motion activities of others that resulted in OSHA initiating an inquiry, the only possible conclusion is that the Complaint sufficiently pleaded a second, separate instance of protected activity. To suggest otherwise is to ignore the plain text of the governing regulation, § 1977.10(b).

## 2.   The Complaint sufficiently alleges adverse action.

The Complaint also alleges two significant and highly troubling subsequent adverse actions that would dissuade a reasonable worker from reporting an injury or causing an OSHA proceeding to be instituted: initiating a law enforcement investigation and facilitating an arrest. *See* ECF No. 1, ¶¶ 26-49. Because the Complaint need only allege one such adverse action to establish the second prong of the prima facie case, for the sake of brevity and efficiency, this Opposition focuses on just the first adverse action — specifically, the allegation in Paragraph 35 of the Complaint that, approximately two to three weeks after Paz's injury, Defendant Pirez initiated a law enforcement investigation of Paz.

Since the adverse action being alleged in Paragraph 35 took place approximately two to three weeks after Paz's injury, it is clear that the action alleged was subsequent to the protected activity described above. Thus, the only remaining question is whether this action was materially adverse — i.e., whether the alleged initiation of a law enforcement investigation plausibly "might have dissuaded a reasonable worker from [engaging in protected activity]." *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-73 (2006) (explaining that the test for materiality is objective and dependent upon context). Most relevant here is that there are a number of adverse actions that would have considerably less impact on a reasonable worker than the initiation of a law enforcement investigation that have been held to be material.[10] As the Supreme Court has observed, the only way to ensure that anti-retaliation provisions serve their

---

[10] *See Burlington Northern*, 548 U.S. at 68-73 (2006) (explaining that actions such as a schedule change, exclusion from a weekly training lunch, a change of duties, or a suspension without pay can be materially adverse); *Rodriguez-Vives*, 743 F.3d at 284-86 (citing *Burlington Northern,* reversing district court's 12(b)(6) dismissal of Title VII retaliation claim, and noting that assignment of certain job duties and not being allowed to get lunch in the same way as other employees can constitute materially adverse action); *Secretary v. Eastern Awnings Systems, Inc. et al.*, 2018 WL 4926447, at *6 (D. Conn. Oct. 10, 2018) (denying the defense's motion for summary judgment in a § 11(c) case and noting that the selective enforcement of employment policies can constitute materially adverse action).

statutory purpose is to ensure that they apply to any action by the employer that causes harm to the employee, without regard for where the harm at issue occurs. *Id.* at 63-64.

As an initial matter, it should be dispositive that the Motion does not even attempt to argue that the alleged action at issue was not materially adverse. Put differently, since the Motion sets forth extensive arguments in regard to the first and third prongs of the prima facie case (protected activity and causation, respectively), the Motion's silence on the second prong (adverse action) equates to a concession that the Complaint sufficiently pleaded adverse action. *See* ECF No. 7 at 10-17.

In any event, the Complaint further alleges in Paragraph 51 that the alleged adverse action at issue would "dissuade a reasonable worker from reporting an injury or causing an OSHA proceeding to be instituted." This allegation is highly plausible. It reflects the objective truth that reasonable employees will look at what happened to Paz after he engaged in protected activity and be dissuaded from engaging in such activity themselves. To give a specific example, if reasonable employees see that the reporting of an injury is followed by the employer's initiation of a law enforcement investigation in regard to the injured employee, the almost certain result is going to be the chilling of such reporting. *See Contreras v. Corinthian Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180, 1185 (N.D. Cal. 2000) (granting summary judgment for former employee in case brought under the anti-retaliation provisions of the Fair Labor Standards Act after finding that the employer's referral of the former employee to law enforcement constituted materially adverse action).

Since this is the exact result by which both the Supreme Court and the First Circuit have defined material adverse action, the only possible conclusion is that the Complaint sufficiently pleaded the second prong of the prima facie case. *See Rodriguez-Vives*, 743 F.3d at 286

(reiterating that, at the 12(b)(6) stage, the complaint need only allege actions "in sufficient detail to make them plausible").

### 3.    The Complaint sufficiently alleges a causal nexus.

The Complaint plainly alleges that Defendants had knowledge of the protected activity before the adverse action. *See* ECF No. 1, ¶¶ 16-19.[11] Thus, the only question is whether the Complaint sets forth a causal nexus between that activity and the adverse action at issue. The Complaint easily satisfies the nexus requirement.

Specifically, Paragraph 52 of the Complaint alleges that the approximately two to three weeks temporal proximity between the protected activity and the adverse action is by itself sufficient to establish the third prong of the prima facie case. There is ample legal support for this allegation. *See Pac. Ship,* 2015 WL 7292594, at \*2-3 & \*6 (three week gap between protected activity and adverse action sufficient by itself to establish the causation prong of a § 11(c) prima facie case); *see also Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 178 (1st Cir. 2015) (two month gap between protected activity and adverse action sufficiently short to establish a prima facie case of retaliation in Title VII case at summary judgment stage); *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (2nd Cir. 2013) (same in regard to three week gap); *Rock*, 2015 WL 6453139, at \*14 (same in regard to approximately two month gap)*; Lute v. Dominion Nuclear Connecticut, Inc.*, 2015 WL 1456769, at \*13 (D. Conn. Mar. 30, 2015) (same in regard to one month gap where temporal proximity alone was the only evidence of causation); *Moreta v. First Transit of PR, Inc.,* 39 F. Supp. 3d 169, 179 (D.P.R. 2014) (observing in the context of a Title VII summary judgment ruling that the "law on this

---

[11] In retaliation cases where it is not clear from the context, it may be necessary to establish as part of the prima facie causation case that the employer knew of the alleged protected activity. *See Rock v. Lifeline Sys. Co.*, 2015 WL 6453139, at \*15 (D. Mass. Oct. 23, 2015). That is not applicable here, since it is undisputed Defendants knew about the alleged protected activity prior to the adverse action at issue.

point is pellucid: a showing of temporal proximity alone can suffice to meet the relatively light

burden of establishing a prima facie case of retaliation") (internal quotation marks and citation

omitted).

Curiously, although the Motion acknowledges that the Complaint alleges "two to three

weeks" between the protected activity and the adverse action, *see* ECF No. 7 at 14 n.9, the

Motion does not attempt to address either the issue of temporal proximity or any of the relevant

case law. *See* ECF No. 7 at 10-17. The Court thus need read no further on this point. Because the

Complaint alleges two to three weeks' temporal proximity, the third prong of the prima facie

case is sufficiently established as a matter of law. *See Vil v. Price Waterhouse Coopers LLP*,

2012 WL 3202852, at *16 (D. Mass. Aug. 2, 2012) (holding that a Rule 12(b)(6) dismissal on the

third prong of prima facie case would be "inappropriate" in regard to Title VII retaliation claim

where a two to three month gap was alleged between the protected activity and the adverse

action).

It also bears noting that this is not the situation where the broader context alleged makes

temporal proximity appear more correlation than causation. Based on the allegations in the

Complaint, it is eminently plausible to infer that Defendants were motivated to cause harm to Paz

because of the difficulties his protected activity created for them. No more is required here.

### 4.     Since the Complaint sets forth a complete prima facie case, the Motion can be dismissed without further analysis.

As described above, the Secretary sufficiently alleged each element of the prima facie

case. This means that, as a matter of law, the Complaint sets forth more relevant detail than

required insofar as Rule 12(b)(6) is concerned. *See Garayalde-Rijos*, 747 F.3d at 24 (explaining

that a retaliation complaint is not required to set forth a complete prima facie case). The Motion

can thus be denied without further analysis. To the extent the Court may be interested, however,

in reviewing additional allegations relevant to causation, all of the allegations specified in the next section concerning pretext obviously apply to the prima facie causation prong as well.

### D. That the Complaint also alleges facts demonstrating pretext further illustrates that the Rule 12(b)(6) argument is without basis.

If this were summary judgment, once the Secretary had established a prima facie case of retaliation, the defense would then have to articulate a legitimate non-discriminatory reason for the adverse action, after which the Secretary would have the burden of demonstrating that the purported reason was pretext. *E.g., Ponte*, 741 F.3d at 321; *Hoy Shoe*, 32 F. 3d at 365. This case, however, is at the pleading stage, not the summary judgment stage. Thus, even though the Secretary was under no obligation to do so, in addition to pleading a complete prima facie case as described above, he also ensured that the Complaint identified the reason he ***anticipated*** that Defendants would contend at summary judgment was their alleged non-discriminatory reason for initiating the law enforcement investigation of Paz, and then refuted that anticipated assertion.[12]

Specifically, paragraph 54 of the Complaint alleges that Defendant Pirez initiated the law enforcement investigation "after he concluded 'things didn't add up' because the person named Paz employed by Tara Construction had a different first name than the person about whom the hospital had inquired." The Secretary then set forth additional allegations demonstrating that this purported reason was pretext. *See* ECF No. 1, ¶¶ 53-83. As the Supreme Court has held, pretext may be shown either directly by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981);

---

[12] The Secretary should not be penalized for going considerably beyond what is required of a plaintiff. The complaint is merely where the plaintiff first sets forth the position commencing a litigation. Because the defense is not required to provide its counter-position on any given allegation until summary judgment, it would defy reason to *require* the plaintiff to allege either an anticipated counter-position or the facts establishing it as pretext.

*see also id.* at 255 n.10 (explaining that the prima facie evidence and the resulting inferences may be considered and may even suffice to discredit the defendant's explanation); *Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.").

By way of example, the allegations in the Complaint that demonstrate pretext include as follows:

- The allegation that Defendants treated Paz differently in comparison to other employees as exemplified by Defendants not initiating a law enforcement investigation into the foreman who filled out the injury report regarding Paz, even though the name the foreman used on the injury report was different than the name he went by at Tara Construction (see Paragraphs 59-63 of the Complaint);

- The allegation that it was implausible that Defendant Pirez went straight to law enforcement with his alleged concern about Paz's name, as opposed to either first checking with Paz himself or inquiring of anyone else at Tara Construction whether Paz sometimes went by the name "José" (see Paragraph 65);

- The allegation that the testimony that Defendant Pirez gave to OSHA concerning the circumstances of Paz's arrest was contradicted by both documentary evidence and the account of the same events given by Police Sergeant Gallagher (see Paragraphs 66-76); and

- The allegation that Defendants had a motive to take adverse action against Paz — namely, to impair Paz's ability to assist or participate in regard to any investigations relating to the workplace injury he suffered (see Paragraphs 80-83).

Since any of the foregoing allegations considered alone would be sufficient, the only possible conclusion when they are considered in combination is that the Complaint more than sufficiently alleges pretext. In other words, not only does the Complaint go beyond First Circuit pleading requirements and allege a complete prima facie case, the Complaint also sets forth multiple detailed and extremely plausible allegations demonstrating pretext. This provides still further confirmation that the Complaint is more than sufficient. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (stating that, when plausibility is being evaluated, the facts alleged must be "accepted as true").

**II.      Neither the § 11(c) cause of action nor the relief sought are moot.**

The Motion's reliance on *Secretary v. Ohio Bell Telephone Co.* is misplaced. *See* ECF No. 7 at 17-19. The employer in that case had applied certain corporate guidance to discipline thirteen employees who reported workplace injuries, allegedly on the ground that each employee failed to follow one or more of the company's procedures. 2015 WL 350378, at * 1 (N.D. Ohio Jan. 23, 2015). During the resulting § 11(c) litigation, the employer corrected the guidance and procedures that had resulted in the adverse action at issue, fully compensated the employees who had been disciplined, and certified that all references to the discipline in their files had been removed. *Id.* at *1-2. Thus, by the time of summary judgment, the sole issue remaining was the equitable relief requested by the Secretary — notably, a broad permanent injunction. *Id.* at *2. The district court declined to enter the requested injunction and found that, because (a) there was no longer any uncorrected adverse action in dispute, and (b) the injured employees had been fully compensated, there was no remaining injury for the court to address. *Id.* The Sixth Circuit affirmed and noted that the Secretary had failed to produce any discovery material sufficient to justify the scope of the requested injunction. 655 Fed. Appx. 404, 413 (6th Cir. 2016).

The fundamental difference between the *Ohio Bell* situation and the instant action is that the employer in the former acknowledged the cause of the adverse action at issue and corrected it. Here, Defendants have yet to admit or otherwise acknowledge that it was wrong for them to retaliate against Paz by, e.g., causing the law enforcement investigation at issue to be initiated and facilitating his arrest. To the contrary, the Motion includes tautologies such as "ICE does what ICE does," while glossing over the fact that the law enforcement investigation only occurred because Defendants triggered it. *See* ECF No. 7 at 15-17. Worse yet, the Motion completely fails to acknowledge the Complaint's allegations regarding Defendant Pirez's

misrepresentations to OSHA concerning just how much he did to facilitate Paz's arrest. *Compare id.*, *with* ECF No. 1, ¶¶ 66-76.

Further, in marked contrast to *Ohio Bell*, the Defendants here have yet to pay various categories of monetary damages sought by the Secretary. The Motion's contention that Paz has already received funds through a workers' compensation settlement misses the point. There is no evidence that any of those funds constitute compensation for, e.g., the emotional distress that Paz suffered when he was arrested and not able to work.[13] Since (a) Paragraphs 84-91 of the Complaint detail this emotional distress, (b) the Complaint expressly requests compensatory damages, and (c) it is hornbook law that compensatory damages recoverable under § 11(c) include emotional distress damages,[14] the record demonstrates that emotional distress damages represent an example of one category of damages for which Paz has not yet been compensated. Tellingly, the Motion does not even mention the words "emotional distress."[15] *See* ECF No. 7.

Punitive damages represent another category of damages that is also not moot. Since (a) it is clear that punitive damages are available in § 11(c) actions,[16] (b) Paragraph 92 of the Complaint expressly alleges that punitive damages are "warranted in light of Defendants' . . . consistently brash conduct" and "callous indifference to Paz's rights under the Act," and (c) the

---

[13] It is also premature, at this phase, for the court to address what impact, if any, the recovery of back wages in the workers' compensation settlement has on back wages being sought in this action by the Secretary.

[14] *E.g.*, *Secretary v. Clearwater Paper Corp.*, 184 F. Supp. 3d 831, 843 (D. Idaho 2016) (awarding $50,000 in emotional distress damages in § 11(c) case); *Secretary v. U.S. Postal Serv.*, 76 F. Supp. 3d 1168, 1193 (W.D. Wa. 2015) (awarding $150,000 in emotional distress damages in § 11(c) case).

[15] The last page of Exhibit F to the Motion contains an affidavit breaking down the funds Paz received in workers' compensation into three categories: indemnity expenses; medical benefits; and expenses, including legal fees. No mention is made of emotional distress damages.

[16] *E.g.*, *Secretary v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187, 1192-95 (1st Cir. 1994) (affirming district court's award of punitive/exemplary damages where defendant's conduct was "consistently brash" and defendant had wrongfully terminated the complainant as an example to other employees); *Clearwater*, 184 F. Supp. 3d at 843-44H (finding that punitive damages were necessary to deter future misconduct where employer's actions chilled the reporting of safety violations).

Prayer for Relief requests punitive damages, it is curious that there is only a single reference to such damages in the Motion. *See* ECF No. 7 at 19. Perhaps the reason the Motion contends the request for punitive damages "makes no sense" is because the Motion at a fundamental level neither acknowledges that the retaliation alleged would almost certainly chill the reporting of workplace injuries, nor considers how all the relevant conduct will appear to the ultimate finder of fact when the fully developed factual record is set forth after discovery.

These deficiencies are only compounded by the Motion's failure to acknowledge the allegations concerning the extent to which Defendant Pirez misrepresented to OSHA his facilitation of Paz's arrest. To illustrate the point, it is eminently plausible that the ultimate finder of fact could conclude that Defendants: (a) saw Paz as a problem/threat due to his § 11(c) protected activity and/or some combination of that activity and the gap in Tara Construction's workers' compensation coverage; (b) caused the law enforcement investigation at issue to be initiated; (c) claimed to be acting charitably by setting up a meeting with Paz to give him "some money to help him out"; (d) duplicitously used that same meeting to facilitate his arrest; and (e) then made misrepresentations to OSHA regarding (c) and (d). *See, e.g.*, ECF No. 1, ¶¶ 13-25, 30-32, 35, 45-49, & 66-76. Moreover, given the allegation that Defendant Pirez told OSHA he was not concerned about the gap in workers' compensation, the finder of fact could further find that Defendants' concern about that gap was at most a minor concern, from which it could be inferred that the activity protected under § 11(c) was essentially the sole cause of the retaliation. *See id.* ¶ 31.

The Motion also has no basis for contending that the equitable relief sought by the Secretary is moot. First, each item of equitable relief that is being requested is commonly ordered in § 11(c) cases after retaliation is established.[17]

Second, as the table below details, the Secretary is more than justified for continuing to ask for each such item here.

| Paragraph No. in Complaint (ECF No. 1 at 13-14) | Relief Requested | Reason(s) not moot |
|---|---|---|
| 3(c) | Provide neutral letter of reference | Will permit Paz to account for his time at Tara Construction without negative inference. |
| 3(d) | Expunge from files any information regarding adverse action against Paz relating to this Complaint | Unlike in *Ohio Bell* at the summary judgment stage, it has not yet been established in this action that Defendants' files contain no such reference(s). |
| 3(e) | Post notice for 120 days stating that Tara Construction will not discriminate under § 11(c) | Unlike the broad permanent injunction at issue in *Ohio Bell*, the equitable relief requested here in regard to a notice is narrowly tailored, appropriate to the allegations, and necessary to address the chilling effect of the alleged retaliation. |
| 3(f) | Electronically distribute notice like that in 3(e) to all current employees and all employees hired in last two years | |

## III.   The Motion raises various non-issues that are not relevant at this stage, if at all.

### A.   Massachusetts state law does not render § 11(c) inapplicable.

The last argument asserted by Defendants, that the Secretary's claim should be dismissed because of Paz's state law workers compensation claim, is specious. First, state law does not operate to pre-empt federal law. *See* U.S. Const. art VI, § 2 ("This Constitution, and the laws of

---

[17] *See, e.g.*, *Secretary v. Eastern Awning Systems, Inc. et al.*, Case No. 15-1692, ECF No. 120 at 5, ¶ 5 (D. Conn. Jan. 10, 2019) (requiring neutral letters as part of Consent Judgment); *Postal Serv.*, 76 F. Supp. 3d at 1195 (granting post-trial request to purge personnel records); *Secretary v. Sandpoint Gas N Lube Ctr. Inc.*, 2015 WL 10889991, at *1 (D. Idaho Sept. 29, 2015) (ordering posting of a notice pursuant to entry of judgment).

the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.").

Second, the Motion, perhaps not surprisingly, fails to cite any case law in support of the alleged "workers compensation sole remedy" argument. The only case cited by Defendants, *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548 (8th Cir. 1993), concerned an employee's failure to establish causation under a state law retaliation claim (at summary judgment) and has no relevance to the issues in this case.[18]

Third, the plain text of the Massachusetts laws that the Motion cites makes clear that accepting workers' compensation payments at most waives other claims under state/common law resulting from the physical injury for which those payments were made, here Paz's broken leg.[19] The settlement does not bar the Secretary's right to recover for the retaliation Paz suffered for engaging in activity protected under § 11(c), even if such protected activity relates to the physical injury. The harms are factually and legally distinct.

Fourth, the Occupational Safety and Health Act itself further confirms that § 11(c) of the Act addresses only the harm caused by retaliation for engaging in activity protected by the

---

[18] Notably, in a prior decision in the same case, the language used by the Eighth Circuit reinforces the importance of the § 11(c) remedial scheme. *See* 922 F.2d 473, 475-77 (8th Cir. 1990) (holding that § 11(c) did not preempt a state law retaliation claim because there was "no evidence employees will forgo their [statutory] options and rely solely on state remedies for retaliation").

[19] The Motion cites Massachusetts General Law Chapter 152, Sections 23 and 24, which concern workers' compensation law in Massachusetts. ECF No. 7 at 19. Section 23 states that, under certain circumstances, an employee who, e.g., accepts payment of compensation on account of personal injury, may thereby waive various common law claims against the insured. Section 24 further states that, under certain circumstances, an employee may waive "any right created by statute, at common law, or under the law of any other jurisdiction against such employer, including, but not limited to claims for damages due to emotional distress, loss of consortium, parental guidance, companionship or the like, when such loss is a result of any injury to the employee that is compensable under this chapter."

statute, not injuries suffered by employees in the workplace.[20] As the Act plainly states, it is the Secretary, and the Secretary alone, who may bring a cause of action in regard to the former, not the employee. 29 U.S.C. § 660(c)(2).

### B.    The Massachusetts Attorney General's actions are not relevant.

Any investigation allegedly conducted by the Massachusetts Attorney General regarding workers' compensation is not relevant to the Rule 12(b)(6) Motion or this litigation generally. *See* ECF No. 7 at 9 & 20. To borrow the Motion's formulation, the AG does what the AG does. Whatever that is, was, or yet may be, however, has no bearing on the § 11(c) claim at issue here.

### C.    The Motion's contention that Defendants' response to the OSHA inquiry undermines the retaliation allegation is misplaced.

There are several fundamental flaws in the Motion's contention that retaliation could not have occurred because Defendants responded to the OHSA inquiry that began shortly after the injury occurred or because Defendants contended they were addressing the workers compensation gap. *See* ECF No. 7 at 12-15. First, the Motion's assertion that this OSHA inquiry was over by 4/7/2017 is speculation. *See id.* at 2. Although the Motion describes various actions taken by Defendants in regard to this inquiry, the Motion's argument on this point reduces to the proposition that, as of 4/7/2017, Defendants had provided information to OSHA but had not been told the outcome, if any, of the inquiry. *See id.* at 4-6 & 13-14. To be clear, there is no allegation

---

[20] As noted above, § 11(c)(1) states: "No person shall discharge or in any manner discriminate against any employee because such employee has [engaged in protected activity]. 29 U.S.C. § 660(c)(1). The Act further states: "Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries . . . of employees arising out of, or in the course of, employment." *Id.* § 653(b)(4).

in the Complaint or the Motion that anyone from OSHA ever told Defendants they were "in the clear."[21]

Second, even if OSHA had informed Defendants they were in the clear at any point between when the OSHA inquiry began shortly after the injury occurred on 3/29/2017 and two to three weeks later when Defendants initiated the law enforcement investigation of Paz, the alleged retaliatory conduct that is at issue here would be no less retaliatory. The issue is whether Defendants retaliated, not whether they did so (a) while they knew an OSHA inquiry was open or (b) after they believed OSHA was no longer watching them as closely. Although it is not relevant now, the only real difference between the two situations is that the ultimate finder of fact may find the latter to warrant a greater amount of punitive damages.[22]

**D.      This Opposition does not try to address each irrelevant item in the Motion.**

Since the Motion itself concedes that it discusses items "not necessary for purposes of the captioned motion to dismiss," *see* ECF No. 7 at 8 n.5, the Secretary does not attempt in this Opposition to address each such item. To the contrary, the main thrust of this Opposition is simply that, insofar as the Motion does address items that are relevant, the Motion fails to identify any basis that would render the requested dismissal appropriate — legal, factual, or otherwise.

## CONCLUSION

For the reasons stated, the Secretary respectfully requests that the Court deny the Motion in its entirety.

---

[21] Although outside the scope of the Motion, the Secretary notes that it will be shown in discovery that Tara Construction subsequently did, in fact, receive a Serious Citation relating to the 3/29/2017 injury.

[22] The Motion also erroneously asserts that the Secretary claims that Defendants retaliated against Paz in order to interfere with his workers' compensation benefits. ECF No. 7 at 13. Rather, the Secretary's claim is that Defendants' retaliated against Paz under § 11(c) because he engaged in protected activity — e.g., he reported his injury and caused an OSHA inquiry into Tara Construction.

Respectfully submitted,

Kate S. O'Scannlain
Solicitor of Labor

Maia S. Fischer
Regional Solicitor

*/s/ Nathan C. Henderson*
Nathan C. Henderson (MA BBO No. 657763)
Senior Trial Attorney
henderson.nathan.c@dol.gov

Kelly M. Lawson
Counsel for Civil Rights
lawson.kelly@dol.gov

Attorneys for Plaintiff,
U.S. DEPARTMENT OF LABOR

Office of the Solicitor
JFK Federal Building, Room E-375
Boston, MA 02203
T 617.565.2500 | F 617.565.2142

## CERTIFICATE OF SERVICE

I certify that the above document and any exhibit(s) are today being filed electronically and that the transmission of the resulting Notice of Electronic Filing (NEF) through the Court's transmission facilities will constitute service of the filed document(s) upon each registered ECF user.

*/s/ Nathan C. Henderson*
Nathan C. Henderson

Date: April 11, 2019