**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TARA CONSTRUCTION, INC., and PEDRO PIREZ,<br><br>　　　　　　Defendants. | Case No. 19-CV-10369-AK |

## MEMORANDUM AND ORDER ON DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

**A. KELLEY, D.J.**

On June 21, 2022, a jury found that Defendants Tara Construction, Inc. ("Tara"), and Pedro Pirez ("Pirez") violated Section 11(c) of the Occupational Safety and Health Act of 1970 (the "OSH Act"), 29 U.S.C. § 660(c), when they retaliated against their employee, Martin Paz ("Paz") after he suffered a workplace injury.  [See Dkt. 258].  Defendants now seek to overturn this verdict, renewing their motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and, in the alternative, moving for a new trial pursuant to Federal Rule of Civil Procedure 59.  [Dkt. 285].  Plaintiff Martin J. Walsh, the Secretary of Labor for the United States Department of Labor (the "Secretary"), opposes such action.  [Dkt. 291].  For the following reasons, Defendants' renewed motion for judgment as a matter of law and, in the alternative, motion for a new trial [Dkt. 285] is **DENIED**.

## I.    BACKGROUND

This case arose from an investigation into a complaint filed on behalf of Paz, who was working onsite as a drywall taper for Defendants on March 29, 2017, when he fell from a ladder and was injured.  Paz's injury set into motion an investigation by the Occupational Safety and Health Administration ("OSHA"), an agency within the U.S. Department of Labor that administers the OSH Act.  Section 11(c) of the OSH Act, in relevant part, prohibits employers from retaliating against any employee "because such employee has . . . instituted or caused to be instituted any proceeding under or related to [the OSH Act]."  29 U.S.C. § 660(c)(1).  To prove that an employer retaliated against an employee in violation of Section 11(c), the Secretary must prove that the employee (1) engaged in protected activity; (2) the employer subsequently took adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action.  See Perez v. N. Terry Fayad, D.M.D., P.C., 101 F. Supp. 3d 129, 133-34 (D. Mass. 2015).  Central questions at trial were whether Paz engaged in "protected activity" and whether Defendants took adverse action against Paz because of that protected activity.

While specific evidence presented at trial will be discussed below in greater detail as relevant, it is helpful to have a general understanding of the facts of the case to frame the issues before the Court now.  Paz fell from a ladder while employed by Tara and working onsite at a project on March 29, 2017.  When Paz fell, other workers came to his aid, spoke to him, and eventually called 911.  Paz was then transported by ambulance to a hospital, where he had surgery to repair a broken femur.  Defendant Pirez visited him in the hospital that day.  The hospital then sought payment information for Paz's treatment from Tara.  The Boston Fire Department reported Paz's injury to OSHA on the same day it occurred, and OSHA contacted Tara and opened an investigation.

Within weeks of Paz's injury, and perhaps days or hours—no witness involved could recall the exact time—Pirez called Boston Police Department ("BPD") Detective Juan Seoane ("Detective Seoane"), with whom he had a familial relationship, to inquire about Paz. Pirez provided Detective Seoane with Paz's employment information, including his social security number. The Secretary argued that Pirez reached out to Detective Seoane about Paz in retaliation for Paz's protected conduct, i.e, causing an OSHA investigation to be instigated, while the Defendants argued that Pirez called Detective Seoane because the hospital had referred to Paz by a different name and he wanted to know more. After his call with Pirez, Detective Seoane opened an investigation into Paz and involved Sergeant Detective Gregory Gallagher, BPD's Immigration and Customs Enforcement liaison. Shortly thereafter, Pirez asked Paz to come to Tara's office at a specific date and time. Pirez texted the date and time of that meeting and Tara's address to Detective Seoane. On May 10, 2017, Paz went to Tara's office at the requested time and was arrested approximately one block from Tara's office after he left.

## II.    LEGAL STANDARD

"A party seeking to overturn a jury verdict faces an uphill battle." <u>Marcano Rivera v. Turabo Med. Ctr. P'ship</u>, 415 F.3d 162, 167 (1st Cir. 2005). Judgment as a matter of law under Federal Rule of Civil Procedure 50 is appropriate only if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find" for the non-moving party. Fed. R. Civ. P. 50(a)(1). In other words, the Court "may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." <u>Rivera Castillo v. Autokirey, Inc.</u>, 379 F.3d 4, 9 (1st Cir. 2004) (citation and internal quotation marks omitted). When evaluating a motion for judgment as a matter of law, the Court must "construe the facts in

the light most favorable to the jury verdict and draw any inferences in favor of the non-movant." Sánchez v. Foley, 972 F.3d 1, 10 (1st Cir. 2020) (citation omitted).

The Court's "power to grant a motion for a new trial is much broader than its power to grant" judgment as a matter of law. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (citation omitted). The Court may grant a motion for a new trial under Federal Rule of Civil Procedure 59 if "the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Sánchez, 972 F.3d at 16 (citation omitted). Unlike a court's consideration of the evidence when reviewing a motion for a judgment as a matter of law, a "district court is free to independently weigh the evidence" when evaluating a motion for a new trial. Id. Still, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial," Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 551 (1st Cir. 2019) (citation omitted), and "trial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree," Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc., 27 F.4th 14, 21 (1st Cir. 2022) (citation and internal quotation marks omitted). Where a motion for a new trial is "at bottom, based on sufficiency of the evidence, the standards under Rule 50 and Rule 59 effectively 'merge.'" Id. (citation omitted).

## III.   DISCUSSION

Defendants present three reasons for overturning the jury's verdict. First, Defendants argue that there is insufficient evidence to support the conclusion that Defendants engaged in unlawful retaliation in violation of Section 11(c) of the OSH Act. [Dkt. 288 at 3-23]. Second, Defendants contend that the jury's verdict resulted from prejudicial errors in the instructions the Court gave the jury. [Id. at 23-32]. Third, Defendants claim that the Court's exclusion of certain

evidence relating to Paz's arrest record was prejudicial.  [Id. at 32-33].  The Secretary disagrees on all three counts.

### A.   Evidence of Unlawful Retaliation

Defendants argue that the evidence presented at trial failed to establish that Paz engaged in protected conduct and that Defendants retaliated against Paz because of any protected conduct. [Dkt. 288 at 3-24].  The Secretary counters that the evidence supports the conclusion that Paz engaged in protected activity by causing an OSHA investigation and by reporting a workplace injury and that, at minimum, the evidence supports the reasonable inference that such conduct caused Defendants' adverse action against Paz.  [Dkt. 291 at 3-19].

Under the OSH Act, an employee is protected from retaliation by an employer when he "instituted or *caused to be instituted* any proceeding under or related" to the OSH Act. 29 U.S.C. § 660(c)(1) (emphasis added).  "An employee need not himself directly institute the proceedings," and it "is sufficient if he sets into motion activities of others which result in proceedings under or related" to the OSH Act.  29 C.F.R. § 1977.10(b).  The Secretary presented ample evidence at trial to show Paz engaged in protected activity by causing an OSHA proceeding to be instituted.  When Paz fell from a ladder while he was working as a drywall taper for Tara on a Boston worksite on March 29, 2017, Francisco Lopes ("Lopes"), who was onsite working for a different subcontractor at the time, heard screaming and found Paz on the floor.  [Day 1 Trial Tr. 66:10-67:2].  Lopes testified that he spoke with Paz in Spanish, and Paz kept "pointing down towards his leg," which he could not move, and told Lopes he was in pain. [Id. at 67:1-8].  Lopes then called Mike Bracani ("Bracani"), the assistant project manager for the general contractor, who came to the scene of Paz's injury.  [Id. at 69:6-20].  Lopes and Bracani discussed calling 911, and Lopes told Bracani to call 911 after Paz "told [Lopes] he couldn't

move his leg."  [Id. at 69:19-70:6 ("Q: And what was it about your interaction with Mr. Paz that caused you to tell Mike Bracani to call 911?  A: When he told me he couldn't move his leg.")]. Lopes then translated for Paz while Bracani was on the phone with 911 and when emergency medical technicians arrived on the scene, including translating Paz's responses to questions about Paz's injury.  [Id. at 71:15-72:25].  Paul Fitzpatrick, a lieutenant with the Boston Fire Department, later testified that the Boston Fire Department learned of Paz's injury from the 911 call and reported it to OSHA.  [Id. at 90:15-22, 94:4-24].  While Defendants argue that Lopes' own observations of Paz's leg—and not Paz's comments—caused him to tell Bracani to call 911, the jury was not required to draw this conclusion, nor does the evidence on which they rely weigh so strongly in Defendants' favor that the jury's conclusion should be overturned.  The evidence shows that Paz's screams drew workers to the scene of the injury, and his injury *and* the comments he made regarding his leg and the pain he was experiencing led those workers to call 911.  As a result of that 911 call, the Boston Fire Department reported the injury to OSHA.

The fact that Defendants presented evidence in contradiction of this conclusion does not suffice to overturn the jury's verdict here, where the jury's conclusion was not "against the weight of the evidence," nor is a new trial "required in order to prevent injustice."  See Jennings, 587 F.3d at 436 (citations omitted) (noting that a "district judge cannot displace a jury's verdict merely" because a "contrary verdict may have been equally . . . supportable").  Defendants' argument, and the evidence they cite in support of their request for judgment as a matter of law or for a new trial, gives undue weight to carefully curated excerpts of Lopes' testimony and ignores other testimony provided by Lopes that the jury was entitled to credit.  A jury could easily conclude that Paz's injury and his communications regarding that injury set into motion

events that led to OSHA's investigation into Tara and was therefore protected conduct under federal law.  See 29 U.S.C. § 660(c)(1); 29 C.F.R. § 1977.10(b).

Paz's comments about his injury in the immediate aftermath, while still at the worksite, could also be construed as a report of a workplace injury.  There is also evidence to support the conclusion that Paz reported his workplace injury to Pirez and to employees at the hospital where he was treated for his injury.  Pirez testified that he learned the details of Paz's injury when he visited Paz in the hospital the same day he was injured, after Paz authorized medical personnel to tell Pirez about his injury.  [Day 2 Trial Tr. at 191:12-16, 193:3-18, 194:1-4].  Moreover, Paz testified that while he was in the hospital, he told Pirez that he needed Pirez "to help [Paz] recover [him]self," that is, "to support [Paz] as [his] boss, how he could."  [Day 1 Trial Tr. 127:11-20].  Paz also testified that he brought a doctor's letter to Tara's office when he picked up checks after his injury.  [Id. at 143:12-20].  Paz further testified that he informed the emergency medical technicians and hospital employees that he was injured at work and that he worked for Tara.  [Id. at 141:12-142:3].  A jury could conclude that, through these conversations, Paz reported a workplace injury to several sources, including Defendants, and thereby instituted or caused to be instituted an OSHA proceeding against Defendants, which is protected conduct under the OSH Act.

Defendants also argue that the Secretary failed to provide evidence that Defendants took adverse action against Paz because of his protected conduct, focusing in isolation on the timing of each individual report of Paz's injury and Defendants' behavior immediately following those reports.  These conversations, however, cannot be viewed in a vacuum, and there was sufficient evidence presented at trial for the jury to find that the Defendants were aware of Paz's protected activity prior to taking adverse action against him.  See Harrington v. Aggregate Indus. Ne.

Region, Inc., 668 F.3d 25, 34 (1st Cir. 2012) ("In retaliation cases, the whole is sometimes greater than the sum of the parts.").  Pirez learned on the day of Paz's injury that Paz would need surgery, and, in the days immediately following Paz's injury, that the hospital sought payment for the injury from Tara.  [See Day 2 Trial Tr. 193:16-21, 199:8-201:24; Day 4 Trial Tr. 47:8-48:9].  A jury could reasonably infer that Paz's injury was therefore being treated as a workplace injury.  Moreover, Pirez himself acknowledged that he learned that OSHA knew about Paz's injury on the day of the injury and that it was one of the "big problems" Tara was dealing with that day.  [Day 2 Trial Tr. 189:5-23, 190:1-8].  Pirez also testified that he signed documents related to OSHA's investigation into Paz's injury in the days following the accident.  [Id. at 194:20-195:1].  The evidence also suggests that Pirez contacted Detective Seoane about Paz after Paz's injury.  Though neither party could recall the exact date, Detective Seoane stated that it was at the end of March, and the searches Detective Seoane ran regarding Paz's identity indicated it was no later than April 10, 2017.  [Day 2 Trial Tr. at 27:21-24, 43:17-22].  As such, a jury could reasonably infer that the Defendants knew or suspected that Paz had set in motion OSHA's investigation into Tara and that Pirez spoke to Detective Seoane regarding Paz in retaliation for setting in motion that OSHA proceeding.  See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 50 (1st Cir. 2010) (noting that "the timing often is strongly suggestive of retaliation" when "an adverse action follows hard on the heels of protected activity").

In a case such as this one, which requires the factfinder to parse "conflicting versions of the truth," it is "the jury's function—not the court's—to choose between these versions," and judgment as a matter of law is inappropriate.  Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 29 (1st Cir. 2012).  The jury heard and considered both parties' explanations of the events and decided that the Secretary's version of events was more likely the truth.  Even if the Court were

to reweigh the evidence, Defendants have not presented sufficient grounds for granting a new

trial, as the Secretary presented credible evidence in support of its claim that Defendants

retaliated against Paz in violation of Section 11(c) of the OSH Act.

**B.      Jury Instructions**

Defendants claim that a new trial is warranted because two of the Court's jury

instructions were incorrect.  [See Dkt. 288 at 23-32].  They first argue that the Court's instruction

on adverse action was erroneous and prejudicial.  [Id. at 23-25].  Defendants contend the same

regarding the Court's instruction on causation.  [Id. at 25-32].  The Secretary counters that both

instructions were consistent with legal standards.  [Dkt. 291 at 19-24].

A court may grant a new trial when "a verdict [] results from prejudicial error in jury

instructions" because such "a verdict [] is against the law."  Teixeira v. Town of Coventry, 882

F.3d 13, 16 (1st Cir. 2018) (citation omitted).  A jury instruction is reversible error only where it

is (1) "misleading, unduly complicating, or incorrect as a matter of law," and (2) "cannot be

considered harmless."  Davignon v. Clemmey, 322 F.3d 1, 9 (1st Cir. 2003) (citations omitted).

Jury instructions should "furnish a set of directions composing, in the aggregate, the proper legal

standards to be applied by lay jurors in determining the issues that they must resolve in a

particular case," and the "choice of language is largely a matter of discretion" so long as the

instructions accomplish that task.  United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995).

**1.      Adverse Action Instruction**

The Court instructed the jury that "the [P]laintiff has the burden to prove that

[D]efendants' conduct rose to the level of a materially adverse employment action.  An adverse

action is one that impacts one's employment and that might have dissuaded a reasonable worker

in the position of Mr. Paz from engaging in protected activity.  This is an objective standard.  It

depends on the context in which the action took place.  [Day 6 Trial Tr. 108:25-109:6].

Defendants maintain that the Court's reference to a reasonable worker "in the position of Mr.

Paz" was erroneous.  [Dkt. 288 at 23-25].  Defendants are mistaken.

As Defendants acknowledge, an adverse action is one that "might have dissuaded a

reasonable worker from" engaging in protected activity.  Burlington N. & Santa Fe Ry. Co. v.

White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).  What Defendants

overlook, however, is that "the significance of any given act of retaliation will often depend upon

the particular circumstances.  Context matters."  Id. at 69.  Indeed, the Supreme Court has noted

the importance of "focusing on the materiality of the challenged action and the perspective of a

reasonable person *in the plaintiff's position*" when analyzing whether an employer's conduct

rises to the level of an adverse action.  Id. at 69-70 (emphasis added).  This same logic applies

when the government brings suit on behalf of an aggrieved employee rather than the employee,

as plaintiff, bringing a civil suit on his own.  The Court's jury instruction made it clear that the

adverse action inquiry is an objective one to be judged from the perspective of a reasonable

person in the position of the wronged worker—here, Paz.  Such an instruction is consistent with

Supreme Court and First Circuit precedent.  See id.; see also Rivera-Rivera v. Medina & Medina,

Inc., 898 F.3d 77, 95 (1st Cir. 2018) ("This objective assessment 'should be judged from the

perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"

(citation omitted)).

### 2.     Causation Instruction

As to causation, the Court instructed the jury:

[T]he [P]laintiff has the burden to prove a causal connection.  This means [P]laintiff must
establish that the [D]efendants intentionally subjected Mr. Paz to a materially adverse
action because Mr. Paz engaged in protected activity.  Plaintiff must show that
[D]efendants would not have taken the adverse action but for desire to retaliate against

Mr. Paz for engaging in protected activity.  Plaintiff does not, however, need to show that
Mr. Paz's protected activity was the sole cause of [D]efendants' action.  If you find that
[D]efendants would not have taken adverse actions against Mr. Paz, if it were not for Mr.
Paz engaging in the protected activity, that is enough to establish a causal connection.

[Dkt. 274 at 109:8-20].  Defendants argue that the Court's instruction was "more lenient" than

the but-for causation standard applicable to Section 11(c).  [Dkt. 288 at 25].  Defendants claim

that the Court's instruction was adopted from the causation standard explained in <u>Bostock v.</u>

<u>Clayton County</u>, 140 S. Ct. 1731, 1739 (2020), which applies only to certain discrimination

claims brought pursuant to Section 2000e-2 of Title VII.  [Dkt. 288 at 25-32].  In essence,

Defendants contend that the Court's causation instruction improperly allowed the jury to find a

causal connection if the unlawful retaliation was *one* cause, even if not the *determinative* cause,

of Defendants' adverse actions.  [<u>See id.</u> at 32].  The Secretary responds that the Court's

instruction was an accurate representation of but-for causation.  [Dkt. 291 at 22-24].

Section 11(c) prohibits employers from retaliating against employees "because of" their

protected activity.  29 U.S.C. § 660(c); <u>see</u> 29 C.F.R. § 1977.6(b) (stating that Section 11(c) is

violated if "adverse action would not have taken place 'but for' engagement in protected

activity").  Contrary to Defendants' assertions, the Court's jury instruction on causation did not

allow for a "more lenient" causation standard than the traditional but-for standard, nor did it

choose between instructing the jury on causation derived from <u>Bostock</u> and causation derived

from other cases, such as <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338 (2013), and <u>Gross</u>

<u>v. FBL Fin. Servs.</u>, 557 U.S. 167 (2009).  [<u>See</u> Dkt. 288 at 25].

In <u>Nassar</u>, the Supreme Court examined the causation standard required for retaliation

claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m), and concluded

that "traditional principles of but-for causation" applied, requiring "proof that the unlawful

retaliation would not have occurred in the absence of the alleged wrongful action or actions of

the employer."  570 U.S. at 360; see also Gross, 557 U.S. at 176 ("Thus, the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act. . . .  [T]herefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action.").  While Defendants argue that the causation standard articulated in the Nassar and Gross line of cases controls here, Defendants' argument relies on a fundamental mischaracterization that "but-for" cause necessarily equates to "sole" cause.

In Bostock, the Supreme Court explained that "a but-for test directs us to change one thing at a time and see if the outcome changes.  If it does, we have found a but-for cause."  140 S. Ct. at 1739.  The Supreme Court also acknowledged that "[o]ften, events have multiple but-for causes," and so long as the protected criteria "was one but-for cause of [the challenged employment] decision, that is enough to trigger the law," citing Nassar, 570 U.S. at 350, in support of this principle.[1]  Id.  Other courts have also acknowledged that Nassar's "'but-for causation' requirement 'does not require proof that retaliation was the only cause of the employer's action,'" and instead requires proof only that "the adverse action would not have occurred in the absence of the retaliatory motive."  Moreta v. First Transit of P.R., Inc., 39 F. Supp. 3d 169, 181 (D.P.R. 2014) (quoting Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013)).  Thus, contrary to Defendants' characterization of the cases, Bostock and the Nassar line of cases are not mutually exclusive, at least as applicable here, and the Court was

---

[1] Defendants claim that Bostock "took care to emphasize that it applied only to cases of status-based discrimination under Title VII" and "refused to 'prejudge' how its interpretation of 'because of' under Section 2000e-2 of Title VII applied to any other question or any other federal law."  [Dkt. 288 at 26 (citing Bostock v. Clayton County, 140 S. Ct. 1731, 1753 (2020)].  Such an argument is an oversimplification of the complex issues in Bostock and misrepresents the significance of the Supreme Court's cautionary language therein.  The cautionary language quoted by Defendants appears in the Supreme Court's discussion of policy arguments and the question of "[w]hether other policies and practices might or might not qualify as unlawful discrimination" after the Bostock decision—not its examination of but-for causation.  Bostock, 140 S. Ct. at 1573.

not—and did not—choose between distinct causation standards.  The Court instructed the jury

that the Secretary had to show that Defendants "would not have taken the adverse action but for

desire to retaliate against Mr. Paz for engaging in protected activity."  [Dkt. 274 at 109:12-14].

While the Court then informed the jury that the Secretary did not "need to show that Mr. Paz's

protected activity was the sole cause" of the Defendants' actions, such an instruction is not at

odds with the but-for causation standard.  [See id. at 109:14-16].  Moreover, the Court continued

to instruct the jury that "[i]f you find that [D]efendants would not have taken adverse actions

against Mr. Paz, if it were not for Mr. Paz engaging in the protected activity, that is enough to

establish a causal connection."  [Id. at 109:17-20].  When read as a whole, such language is a

direct reflection of the but-for causation standard as articulated in Nassar and interpreted by later

courts.  See United States v. Goris, 876 F.3d 40, 48 (1st Cir. 2017) ("Jury instructions must be

read as a whole, not in some sort of splendid isolation.  Thus, a single sentence in a court's jury

instructions cannot be yanked from its contextual moorings and construed in a vacuum."

(citations omitted)).  The Court's jury instruction was neither misleading, complicated, nor

inconsistent with the law, and a new trial is not warranted.

> ### C.       Exclusion of Evidence

Defendants seek a new trial under Federal Rule of Civil Procedure 59 based on the

Court's exclusion of certain details related to Paz's prior arrests.  [Dkt. 288 at 32-33].  The

Secretary counters that Defendants' true purpose behind Defendants' evidentiary request "was an

attempt to villainize Paz by introducing irrelevant and unfairly prejudicial evidence," and the

Court's decision to limit such evidence was proper.  [Dkt. 291 at 25-26].

A party must show "a substantial and injurious effect or influence upon the jury's

verdict" to obtain a new trial based on a challenge to an evidentiary ruling.  Clukey v. Town of

Camden, 894 F.3d 25, 34-35 (1st Cir. 2018).  Defendants have not established such injury here. The Court already explained, in a sealed decision, why it would not allow all of the evidence Defendants sought to admit; while the Court would not allow particular details of prior arrests into evidence for a variety of reasons, it did allow general references to Paz's arrest record.  [See Dkt. 214].  That logic still applies.  Defendants maintain that the "nature of the arrests . . . was *why* law enforcement needed so badly to detain Paz," and therefore its exclusion was prejudicial. [Dkt. 288 at 32 (emphasis in original)].  But the motivation behind law enforcement's actions were not at issue at trial—Defendants' was.  Moreover, while Defendants cursorily suggest that the excluded evidence was relevant to "why Pedro Pirez did what he did," Defendants elicited no such testimony from Pirez even when they had the opportunity to do so during trial.  Pirez was free to testify that Paz's arrest record affected his decision to facilitate Paz's May 2017 arrest. He did not.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' renewed motion for judgment as a matter of law and, in the alternative, motion for a new trial [Dkt. 285] is **DENIED**.

**SO ORDERED.**

Dated: June 14, 2023                                          /s/ Angel Kelley_____
                                                             Hon. Angel Kelley
                                                             United States District Judge